BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

BONNIE E. DEVANY (Tex. Bar No. 24131173)
Trial Attorney
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 616-8101
Fax: (202) 616-8460
Email: bonnie.e.devany@usdoj.gov

*Counsel for United States*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WALSH, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA CINEMA INVESTMENTS LLC et al.,<br><br>Defendants. | Case No. 2:23-cv-9608-ODW-AJR<br><br>**UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT OF THE CONSTITUTIONALITY OF THE VIDEO PRIVACY PROTECTION ACT**<br><br>Hon. Otis D. Wright, II |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 2

I.   Legal Background ................................................................................. 2

II.  Plaintiff's Claims ................................................................................. 5

III. Procedural History .............................................................................. 6

ARGUMENT ................................................................................................ 6

I.   The Court Should Adhere to Constitutional Avoidance Principles. ............ 7

II.  The VPPA Is Not Facially Void for Vagueness. ..................................... 8

III. The VPPA Withstands Intermediate Scrutiny. ....................................... 9

     a.  The VPPA Advances a Substantial Government Interest ................ 10

     b.  The VPPA Directly Advances the Interest Asserted. ..................... 12

     c.  The VPPA Is Sufficiently Tailored. .......................................... 14

IV.  The VPPA Withstands Cinépolis's
     As-Applied Constitutional Challenge. ..................................................... 15

     a.  As applied to Cinépolis,
         the VPPA is not unconstitutionally vague. .................................. 15

     b.  Cinépolis's as-applied First Amendment
         challenge also fails. ............................................................... 16

CONCLUSION ............................................................................................ 18

# TABLE OF AUTHORITIES

**CASES**

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
   140 S. Ct. 2335 (2020) ...................................................................14

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
   457 U.S. 853 (1982) .......................................................................11

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
   492 U.S. 469 (1989) ...........................................................7, 9, 14, 15

*Boelter v. Advance Mag. Publishers Inc.*,
   210 F. Supp. 3d 579 (S.D.N.Y. 2016) ...................................4, 5, 10

*Boelter v. Hearst Commc'ns, Inc.*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016) ........................................*passim*

*Boelter v. Hearst Commc'ns, Inc.*,
   269 F. Supp. 3d 172 (S.D.N.Y. 2017) ...................................4, 5, 10

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973) .......................................................................13

*Brown v. Ent. Merchs. Ass'n*,
   564 U.S. 786 (2011) .......................................................................11

*Burson v. Freeman*,
   504 U.S. 191 (1992) .......................................................................11

*Cal. Tchrs. Ass'n v. State Bd. of Educ.*,
   271 F.3d 1141 (9th Cir. 2001) ......................................................... 9

*Cent. Hudson Gas & Electric Corp. v. Pub. Serv.
Comm'n of N.Y.*,
   447 U.S. 557 (1980) ...............................................................1, 4, 10

*City of Cincinnati v. Discovery Network, Inc.*,
   507 U.S. 410 (1993) .......................................................................15

*Crowell v. Benson*,
   285 U.S. 22 (1932).................................................................................. 8

*Czarnionka v. Epoch Times Ass'n*,
   No. 22 Civ. 6348 (AKH),
   2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ...........................................12, 16

*Edenfield v. Fane*,
   507 U.S. 761 (1993)..........................................................................10, 12

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017)..................................................................10

*Fla. Bar v. Went for It, Inc.*,
   515 U.S. 618 (1995)...................................................................9, 10, 15

*Fox Television Stations, Inc v. Aereokiller, LLC*,
   851 F.3d 1002 (9th Cir. 2017) ................................................................ 7

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972)..............................................................................16

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ............................................................................... 7

*Harris v. Pub. Broad. Serv.*,
   662 F.Supp.3d 1327 (N.D. Ga. 2023) .......................................................12

*Hill v. Colorado*,
   530 U.S. 703 (2000)............................................................................. 8

*Holder v. Humanitarian L. Project*,
   561 U.S. 1 (2010).............................................................................9, 14

*In re Hulu Priv. Litig.*,
   No. C 11-03764 LB,
   2012 WL 3282960 (N.D. Cal. Aug. 10, 2012)..............................................13

*In re Hulu Priv. Litig.*,
   86 F. Supp. 3d 1090 (N.D. Cal. 2015)........................................................16

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016) ............................................................. 2

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...........................................13

*Jefferson v. Healthline Media, Inc.*,
    674 F. Supp. 3d 760 (N.D. Cal. 2023) ............................................. 8

*Katz v. United States*,
    389 U.S. 347 (1967) .....................................................................16, 17

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) ......................................................... 2

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958) ........................................................................11

*Nat'l Cable & Telecomms. Ass'n v. FCC*,
    555 F.3d 996 (D.C. Cir. 2009) ........................................................12

*Nat'l Endowment for the Arts v. Finley*,
    524 U.S. 569 (1998) ......................................................................... 9

*Network, LLC v. Prieto*,
    861 F.3d 839 (9th Cir. 2017) ..........................................................10

*Osheske v. Silver Cinemas Acquisition Co.*,
    No. 2:22-cv-09463-HDV-JCX,
    2023 WL 8188464 (C.D. Cal. Oct. 31, 2023) ............................7, 16

*Paris Adult Theatre I v. Slaton*,
    413 U.S. 49 (1973) ..........................................................................17

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) ......................................................7, 8

*Rubin v. Coors Brewing Co.*,
    514 U.S. 476 (1995) ........................................................................12

Brief in Support of Constitutionality          Case No. 2:23-cv-9608-ODW-AJR

*Saunders v. Hearst Television, Inc.*,
   No. 23-CV-10998-RGS,
   2024 WL 126186 (D. Mass. Jan. 11, 2024) ...................................... 3, 4, 10, 12

*Stanley v. Georgia*,
   394 U.S. 557 (1969) ................................................................... 11, 18

*Tingley v. Ferguson*,
   47 F.4th 1055 (9th Cir. 2022),
   *denying reh'g en banc,* 57 F.4th 1072 (9th Cir. 2023),
   *cert. denied*, 144 S. Ct. 33 (2023) .................................................. 8

*Trans Union Corp. v. FTC*,
   245 F.3d 809 (D.C. Cir. 2001) ..................................................... 10, 11

*Tucson v. City of Seattle*,
   91 F.4th 1318 (9th Cir. 2024) ........................................................ 8

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
   489 U.S. 749 (1989) ................................................................... 10

*United States v. Hansen*,
   599 U.S. 762 (2023) ................................................................ 7, 13

*United States v. Williams*,
   553 U.S. 285 (2008) ............................................................*passim*

*Van Hollen, Jr. v. Fed. Election Comm'n*,
   811 F.3d 486 (D.C. Cir. 2016) .................................................... 11, 17

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982) ................................................................... 13

*Yershov v. Gannett Satellite Info. Network, Inc.*,
   820 F.3d 482 (1st Cir. 2016) ........................................................ 12

**LEGISLATIVE MATERIALS**

S. Rep. No. 100-599 (1988),
   *reprinted in* 1988 U.S.C.C.A.N. 4342-1 ....................................*passim*

**STATUTES**

18 U.S.C. § 2710...........................................................................*passim*

42 U.S.C. § 12181.........................................................................17

**RULES**

Federal Rule of Civil Procedure 5.1 ..................................................... 6

Federal Rule of Civil Procedure 12(b)(6) ............................................. 6

# INTRODUCTION

The Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, prohibits "video tape service provider[s]" from knowingly disclosing their customers' personally identifiable information to "any person," with certain exceptions. Here, Michael Walsh, individually and on behalf of similarly situated persons, alleges that Defendants California Cinema Investments LLC and USA Cinema Investments Holding Inc. d/b/a Cinépolis Luxury Cinemas and Cinépolis USA (collectively, "Cinépolis") violated the VPPA by knowingly disclosing to Meta information about movie tickets purchased on Cinépolis's website. Cinépolis moved to dismiss the complaint on a variety of non-constitutional grounds. Cinépolis also alleges that the VPPA's prohibition on the alleged disclosures violates the First Amendment and the Fifth Amendment's Due Process Clause, both facially and as applied to Cinépolis.

Consistent with settled constitutional avoidance principles, the Court should resolve all non-constitutional questions before addressing constitutional issues. Although the United States takes no position on these non-constitutional questions,[1] analyzing the statute and applying the statute to the facts of this dispute may resolve or substantially narrow the constitutional questions.

Should a constitutional analysis remain necessary, the Court should reject Cinépolis's arguments. Cinépolis's vagueness challenge fails because the VPPA has reasonably clear terms set by statute and interpreted by various court decisions, and Cinépolis had ready notice of those terms' possible application. Further, the VPPA passes intermediate scrutiny under *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York*, 447 U.S. 557 (1980), because the statute

---

[1] The United States takes no position on Cinépolis's non-constitutional arguments in favor of dismissal; the United States intervenes in this matter solely for the limited purpose of defending the constitutionality of the VPPA.

Brief in Support of Constitutionality                    Case No. 2:23-cv-9608-ODW-AJR

serves the government's substantial interest in protecting consumer privacy and intellectual freedom, directly advances that interest, and is no more extensive than necessary to serve that interest.

Accordingly, if the Court determines it must reach Cinépolis's constitutional arguments to resolve the motion to dismiss, the Court should reject them and affirm the VPPA's constitutionality.

## BACKGROUND

### I.    Legal Background

Congress enacted the VPPA in 1988 in response to the *Washington City Paper*'s publication of then-Supreme-Court-nominee Robert Bork's video rental history, obtained without his knowledge or consent. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016). "Members of the Judiciary Committee 'denounced the disclosure,'" and Congress passed the VPPA soon after. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting S. Rep. No. 100-599, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1). Congress passed the VPPA "[t]o preserve personal privacy with respect to the rental, purchase[,] or delivery of video tapes or similar audio visual materials." *Id.* (quoting S. Rep. No. 100-599, at 1). Among other justifications, the Senate Report cited consumers' First Amendment right to intellectual freedom as one of the bases underlying the legislation. *See* S. Rep. No. 100-599, at 4-5.

The statute prohibits a "video tape service provider" from "knowingly" disclosing "personally identifiable information concerning any consumer" to "any person." 18 U.S.C. § 2710(b)(1). It provides several exceptions to this prohibition, permitting (1) disclosure to the consumer; (2) disclosure the consumer has authorized via "informed, written consent" provided "in a form distinct and separate

Brief in Support of Constitutionality                Case No. 2:23-cv-9608-ODW-AJR

2

from any form setting forth other legal or financial obligations"; (3) disclosure to a law enforcement agency pursuant to a warrant, subpoena, or court order; (4) disclosure that is "solely of the names and addresses of consumers," provided the consumer had the ability to opt out and the disclosure does not identify the subject matter of any material (unless the sole purpose is marketing directly to the consumer); (5) disclosure "incident to the ordinary course of business of the video tape service provider"[2]; and (6) disclosure pursuant to a court order in a civil proceeding. *Id.* § 2710(b)(2). The statute creates a private right of action for any aggrieved person to bring a civil suit against any person who violates its terms. *Id.* § 2710(c). The VPPA does not contemplate civil or criminal enforcement by the government.

The statute defines several key terms. Relevant here, a "video tape service provider" is "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(4). "Personally identifiable information" ("PII") is "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *Id.* § 2710(a)(3). A "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1).

The VPPA has recently been subject to several First Amendment challenges similar to the one advanced here. Notably, a court in the District of Massachusetts recently upheld the VPPA's constitutionality as applied to the disclosure of viewing history to third-party analytics companies. *Saunders v. Hearst Television, Inc.*, No.

---

[2] The VPPA defines "ordinary course of business" to include only "debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2).

Brief in Support of Constitutionality                    Case No. 2:23-cv-9608-ODW-AJR

23-CV-10998-RGS, 2024 WL 126186, at *1 (D. Mass. Jan. 11, 2024). The court determined that the case involved commercial speech, and that the VPPA withstood intermediate scrutiny. *Id.* at *5. The court noted that the "Supreme Court has repeatedly recognized the sanctity of personal privacy," and held that prohibiting disclosure "to third parties the precise videos that plaintiffs viewed alongside plaintiffs' PII directly and materially advances that interest." *Id.* The court further held that "the VPPA is narrowly drawn because it applies only to a narrow group of business entities and specific group of consumers." *Id.*

Although no court yet has adjudicated the merits of a *facial* constitutional challenge to VPPA, an analogous state statute has survived such challenges: two different judges in the Southern District of New York determined that a Michigan statute's similar restrictions on disclosure did not violate the First Amendment. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 435 (S.D.N.Y. 2016) ("*Hearst I*"); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 585-86 (S.D.N.Y. 2016) ("*Advance Mag.*"); *see also Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 196-98 (S.D.N.Y. 2017) ("*Hearst II*"). A magazine subscriber sued two publishing companies under the Michigan Video Rental Privacy Act ("MVRPA")—a statute with prohibitions similar to the VPPA, but that also prohibits disclosing written materials and sound recordings consumers acquire—over their practice of selling customer information to data miners. The publishers defended the suits, in part, by arguing that the MVRPA was unconstitutional under the First Amendment on its face and as applied to them. Both courts rejected these arguments.

The court in *Hearst I*, the first of the two cases, determined that the regulated speech—"disclosing the identity of individuals who purchase [certain] products"— was commercial in nature. 192 F. Supp. 3d at 445. Applying the test governing commercial speech, *see Cent. Hudson*, 447 U.S. at 566, the court next found that the

statute was constitutional as applied to the publisher's practice of selling information about its consumers to data miners and other third parties, *Hearst I*, 192 F. Supp. 3d at 451. The court determined that consumer privacy was a substantial state interest, *id.* at 447-48; the data disclosure restrictions in the MVRPA directly advanced that interest, *id.* at 449; and the statute was sufficiently narrowly tailored because it limited "precisely the kind of information with which the state [was] concerned"— namely, information disclosing individuals' reading, listening, and viewing preferences—and "target[ed] those most likely to disseminate it," *id.* The court also rejected the contention that the MVRPA was facially overbroad, observing that facial challenges to statutes that regulate commercial speech are limited to any non-commercial speech the statute covers and finding that the "vast majority of [the statute's] applications" raised "no constitutional problems whatsoever." *Id.* at 451-52 (quoting *United States v. Williams*, 553 U.S. 285, 302-03 (2008)). The court in *Advance Magazine* reached the same conclusions a few months later. *See Advance Mag.*, 210 F. Supp. 3d at 596-603. And in *Hearst II*, the court reaffirmed its *Hearst I* holding that the MVPRA constituted a valid restriction on commercial speech that did not offend the First Amendment. *See Hearst II*, 269 F. Supp. 3d at 196-98.

## II.    Plaintiff's Claims

Plaintiff Michael Walsh brought this putative class action for declaratory and injunctive relief and damages based on Cinépolis's alleged disclosure of PII and video watching data. Compl. ¶¶ 1, 85, ECF No. 1. Cinépolis operates movie theaters throughout the United States and sells movie tickets on its website, from which a "tracking pixel" allegedly collected data and distributed it to Meta. *Id.* ¶¶ 1, 66, 85. This information is allegedly collected "to build digital dossiers on people and retarget them for advertising with alarming accuracy." *Id.* ¶ 2.

Plaintiff's proposed class encompasses "similarly situated individuals defined as all persons in the United States who have Facebook accounts and purchased movie tickets on cinepolisusa.com." *Id.* ¶ 69.[3]

### III.    Procedural History

Plaintiff filed his Complaint on November 13, 2023.  Compl.  On January 29, 2024, Cinépolis moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), raising statutory and constitutional arguments.  Mot. to Dismiss, ECF No. 16-1.  At the same time, Cinépolis filed a notice of constitutional challenge pursuant to Federal Rule of Civil Procedure 5.1, explaining that Cinépolis's Motion to Dismiss argues "that the VPPA . . . violate[s] Due Process and [is] an unconstitutional restraint on speech in violation of the First Amendment of the United States Constitution."  ECF No. 17 at 2.

### ARGUMENT

The Court should decline to address the constitutionality of the VPPA until it resolves all non-constitutional issues raised in Cinépolis's Motion to Dismiss.  If the Court does reach Cinépolis's constitutional challenges, it should reject them.  The VPPA is not facially overbroad, passes intermediate scrutiny, and is not unconstitutional as applied to Cinépolis.

### I.    The Court Should Adhere to Constitutional Avoidance Principles.

Much of Cinépolis's brief addresses statutory, non-constitutional arguments for dismissal.  Although the United States takes no position on the non-constitutional arguments raised by Cinépolis, the Court should consider them before taking up the

---

[3] Plaintiff also brings a distinct class under California law, which Plaintiff defines as "as all Class members in the State of California (the 'California Class') who purchased movie tickets on cinepolisusa.com."  Compl. ¶ 70.

constitutional issues. It is well-established that "prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); *see also Fox Television Stations, Inc v. Aereokiller*, *LLC*, 851 F.3d 1002, 1013 (9th Cir. 2017) ("We therefore adhere to the 'well established principle . . . [that] the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.'" (citation omitted)). And even when courts need to address constitutional issues, the Supreme Court has directed that courts should first resolve as-applied challenges before addressing facial challenges. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484 (1989).

As in the VPPA cases cited in the first part of Cinépolis's brief, statutory interpretation could prove dispositive or else substantially narrow the constitutional analysis. *See, e.g.*, Mot. to Dismiss at 3-4 (discussing *Osheske v. Silver Cinemas Acquisition Co.*, No. 2:22-cv-09463-HDV-JCX, 2023 WL 8188464, at **3-4 (C.D. Cal. Oct. 31, 2023), *appeal docketed*, No. 23-3882 (9th Cir., Nov. 30, 2023), which held a movie theater was not a "video tape service provider" within the meaning of the VPPA. The Court may be able to further avoid constitutional problems by adopting a particular construction of the statute. *See United States v. Hansen*, 599 U.S. 762, 781 (2023) ("When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict."); *Rodriguez v. Robbins*, 715 F.3d 1127, 1133 (9th Cir. 2013) ("It is 'a cardinal principle' of statutory interpretation that, 'if a serious doubt of constitutionality is raised' by one possible construction of a statute, we must 'ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932))).

Brief in Support of Constitutionality                    Case No. 2:23-cv-9608-ODW-AJR

## II.    The VPPA Is Not Facially Void for Vagueness.

Cinépolis's argument that the VPPA is facially void for vagueness in violation of the Due Process Clause is unavailing.  "A law is unconstitutionally vague if it does not give 'a person of ordinary intelligence fair notice of what is prohibited' or if it is 'so standardless that it authorizes or encourages seriously discriminatory enforcement.'"  *Tucson v. City of Seattle*, 91 F.4th 1318, 1329 (9th Cir. 2024) (quoting *Williams*, 553 U.S. at 304).  "The operative question under the fair notice theory is whether a reasonable person would know what is prohibited by the law." *Tingley v. Ferguson*, 47 F.4th 1055, 1089 (9th Cir. 2022), *denying reh'g en banc,* 57 F.4th 1072 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 33 (2023).

"[E]ven when a law implicates First Amendment rights, the constitution must tolerate a certain amount of vagueness."  *Id.*  As such, "uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications,'" *id.* at 1151 (quoting *Hill v. Colorado,* 530 U.S. 703, 733 (2000)), as is the case here.

Most terms in the VPPA are statutorily defined, *see* 18 U.S.C. § 2710(a), and additional clarity has been added by the courts, *see, e.g.*, *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 763-64 (N.D. Cal. 2023).  Cinépolis does not attempt to argue that the VPPA's application is unclear in the vast majority of its applications, and any inquiry to Cinépolis's facial challenge should end there. Instead, Cinépolis challenges the terms "delivery," "similar audio visual materials," and "personally identifiable information" as impermissibly vague.  Mot. to Dismiss at 15.  But Cinépolis does not argue that a person of ordinary intelligence would not understand these terms.  And these terms are "quite different from the sorts of terms that [courts] have previously declared to be vague."  *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010)  For instance, the Supreme Court has "struck down

Brief in Support of Constitutionality                    Case No. 2:23-cv-9608-ODW-AJR

statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Id.* (quoting *Williams*, 553 U.S. at 306). Applying the VPPA's terms, on the other hand, does not require subjective judgments. *Cf. id.* at 21 (holding the statutory terms "training," "expert advice or assistance," "service," and "personnel" were not vague). Moreover, the VPPA's "knowledge requirement . . . further reduces any potential for vagueness." *Id.*; *see* 18 U.S.C. § 2710 (b)(1) (only applying to those "who *knowingly* disclose" PII (emphasis added)).

"Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort." *Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1155 (9th Cir. 2001) (quoting *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998)). Here, Cinépolis has not met its high burden of establishing a facial constitutional problem.

## III.    The VPPA Withstands Intermediate Scrutiny.

Cinépolis does not dispute that the disclosures at issue here amount to commercial speech. Mot. to Dismiss at 16. "Commercial speech enjoys a limited measure of protection." *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 623 (1995) (quoting *Fox*, 492 U.S. at 477) (cleaned up). Because the VPPA regulates commercial speech, its constitutionality under the First Amendment is analyzed using the *Central Hudson* standard. *Id.* That standard examines: (1) "whether the asserted governmental interest is substantial"; (2) "whether the regulation directly advances the governmental interest asserted"; and (3) "whether it is not more extensive than is necessary to serve that interest." *Retail Digit. Network, LLC v.*

1   *Prieto*, 861 F.3d 839, 844 (9th Cir. 2017) (en banc) (quoting *Cent. Hudson*, 447 U.S.

2   at 566).  The VPPA's disclosure prohibitions satisfy this standard.

### a.  The VPPA Advances a Substantial Government Interest

4       The governmental interest underlying the VPPA is "substantial."  Congress

5   passed the VPPA "[t]o preserve personal privacy with respect to the rental, purchase

6   or delivery of video tapes or similar audio visual materials."  S. Rep. No. 100-599,

7   at 1; *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)

8   (explaining that the VPPA "protects privacy interests . . . by ensuring that consumers

9   retain control over their personal information").  Protecting privacy has long been

10   recognized as a substantial governmental interest.  *Fla. Bar*, 515 U.S. at 625 (citing

11   *Edenfield v. Fane*, 507 U.S. 761, 769 (1993)).  "[B]oth the common law and the

12   literal understandings of privacy encompass the individual's control of information

13   concerning his or her person."  *U.S. Dep't of Just. v. Reps. Comm. For Freedom of*

14   *Press*, 489 U.S. 749, 763 (1989).  Courts have specifically acknowledged the

15   government's substantial interest in protecting the privacy of consumer information.

16   *See, e.g.*, *Saunders*, 2024 WL 126186, at *5; *Hearst II*, 269 F. Supp. 3d at 197;

17   *Advance Mag.*, 210 F. Supp. 3d at 599; *see also Trans Union Corp. v. FTC*, 245 F.3d

18   809, 818 (D.C. Cir. 2001) (finding that the government's "interest [in] protecting the

19   privacy of consumer credit information . . . is substantial").

20       The government's interest in protecting privacy is reinforced by its interest in

21   protecting consumers' own First Amendment-protected activities.  That is, the VPPA

22   prevents the chilling of consumers' right to view expressive videos of their choosing.

23   The VPPA was passed in recognition of "the relationship between the right of

24   privacy and intellectual freedom" as a "central part" of the First Amendment.  S.

25   Rep. No. 100-599, at 4.  And "[p]rotecting an individual's choice of books and films

26   is a . . . pillar of intellectual freedom under the first amendment."  *Id.* (citing *Stanley*

27

28   Brief in Support of Constitutionality          Case No. 2:23-cv-9608-ODW-AJR

*v. Georgia*, 394 U.S. 557, 565 (1969)); *see also Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 866-67 (1982) ("[W]e have held that in a variety of contexts 'the Constitution protects the right to receive information and ideas.'" (citation omitted)).   Disclosure can chill the exercise of that right.   *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) ("This Court has recognized the vital relationship between freedom to associate and privacy in one's associations."); *Van Hollen, Jr. v. Fed. Election Comm'n*, 811 F.3d 486, 488 (D.C. Cir. 2016) ("Disclosure chills speech.").   To that end, the government has a substantial interest in regulating disclosures to protect the expressive speech rights of consumers.   *See Burson v. Freeman*, 504 U.S. 191, 208 (1992) (plurality op.) (holding that certain regulations on speech were permissible given "compelling interest in securing the right to vote freely and effectively").

Cinépolis's argument to the contrary applies the wrong law.   Cinépolis cites *Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011), for the assertion that without a long tradition of proscription, the government may not impose new restrictions on commercial speech.   Mot. to Dismiss at 17.   But *Brown* is inapplicable here.   *Brown* addresses when legislators may establish a new category of *unprotected* speech (like obscenity or incitement of violence), not when or how legislators may regulate *protected* speech.   *Brown*, 564 U.S. at 794.   The VPPA, in contrast, does not seek to create a new category of unprotected speech.   Because it is undisputed that this case involves commercial speech within the ambit of First Amendment protection, there is no need to determine whether there is a "long tradition of proscription" justifying no protection at all.   The standard for this case is set by *Central Hudson*—a case *Brown* had no occasion to discuss because *Brown* did not involve commercial speech—and the substantial body of case law defining government interests.

### b.  The VPPA Directly Advances the Interest Asserted.

Aside from a conclusory heading, Cinépolis does not appear to deny that the VPPA "directly advances" the government's asserted interest.  *See* Mot. to Dismiss at 17.  The VPPA does indeed "directly advance" the government's interest in protecting the privacy of individuals' video viewing choices.  When regulating commercial speech, the government must "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree."  *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (quoting *Edenfield*, 507 U.S. at 770-71).  On its face, the VPPA applies to individuals who sell, rent, or deliver video recordings—the only individuals, other than the consumer, likely to have access to the information the statute seeks to keep private.  *Hearst I*, 192 F. Supp. 3d at 449; *see also Saunders*, 2024 WL 126186, at *5 ("[T]he VPPA is narrowly drawn because it applies only to a narrow group of business entities and specific group of consumers.").  Restricting the ability of these individuals to disclose such information directly advances the goal of keeping that information private.  *Id.*; *see also Nat'l Cable & Telecomms. Ass'n v. FCC*, 555 F.3d 996, 1001 (D.C. Cir. 2009) ("The privacy of customer information cannot be preserved unless there are restrictions on the carrier's disclosure of it.").  And the lawsuits that have credibly alleged VPPA violations over the years demonstrate that the disclosures the statute seeks to prevent are a legitimate concern.  *See, e.g.*, *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 484 (1st Cir. 2016) (finding that plaintiffs adequately stated a claim under the VPPA); *Harris v. Pub. Broad. Serv.*, 662 F.Supp.3d 1327, 1136-37 (N.D. Ga. 2023) (same); *Czarnionka v. Epoch Times Ass'n*, No. 22 Civ. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) (same); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221-26 (C.D. Cal. 2017)

(same); *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) (same).

Cinépolis cites *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), for the proposition that the VPPA is "overbroad," Mot. to Dismiss at 18.  Cinépolis argues that "number and breadth of VPPA claims brought against companies from all industries . . . proves the language of the VPPA" is overbroad.  *Id.*  However, "it is irrelevant whether [a statute] has an overbroad scope encompassing protected commercial speech of other persons, because the overbreadth doctrine does not apply to commercial speech."  *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 469-97 (1982).  Since Cinépolis only appears to address the application of the VPPA to commercial speech, *see* Mot. to Dismiss at 18 & n.6 (listing various companies that have been sued under the VPPA), its overbreadth argument fails.  And, in any event, as the *Hearst I* court concluded (in the analogous MVRPA context), the "vast majority of [the statute's] applications" raise "no constitutional problems whatsoever."  192 F. Supp. 3d at 451-52 (quoting *Williams*, 553 U.S. at 302-03).  It is well-settled that "[i]nvalidation for overbreadth is strong medicine that is not to be casually employed."  *Hansen*, 143 S. Ct. at 1939 (quoting *Williams*, 553 U.S. at 293).  Where, as here, the statute does not "reach[] a substantial amount of constitutionally protected conduct[,] . . . the overbreadth challenge must fail."  *Hoffman Ests.*, 455 U.S. at 494; *see also Hansen*, 143 S. Ct. at 1940 ("In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case.").

### c.  The VPPA Is Sufficiently Tailored.

Finally, the VPPA is sufficiently narrowly drawn.  The *Central Hudson* standard requires a fit between the governmental interest and the statute restricting commercial speech that is "not necessarily perfect," but rather "reasonable."  *Fox*,

492 U.S. at 480. Such a fit exists here. As explained, the VPPA's disclosure prohibitions are targeted at the commercial entities most likely to have, and thus, be able to disclose, the information Congress intended to protect. The statute also includes exemptions that allow consumers to make choices about their own information and permit regulated entities to conduct business and comply with law enforcement and judicial directives as necessary. The statute's consent requirements, like providing consumers an opportunity to withdraw consent on a case-by-case basis and requiring consent to be re-obtained every two years, "allow[] consumers to maintain control over personal information." S. Rep. No. 100-599, at 8.

Cinépolis's complaint about the VPPA's standalone, written consent requirement does not undermine the fit between the statute's prohibitions and the government's interest.[4] Cinépolis cites no case law that suggests that this requirement might render the statute unconstitutional. *See* Mot. to Dismiss at 17-18. In arguing that Congress could have chosen less burdensome forms of consent, *see id.* at 18, Cinépolis provides no support for the assertion that Congress must choose the floor for enforceability in its attempts to protect consumer privacy. To the contrary, robust consent requirements can serve salutary purposes: ensuring that consumers are fully and knowingly abdicating their privacy interests serves the "interest in preventing commercial harms [that] justifies more intensive regulation

---

[4] Alternatively, Cinépolis asks the Court to invalidate the VPPA's consent requirements in Section 2710(b)(2)(B)(i)-(iii). Mot. to Dismiss at 19. Although, as discussed in subpart III, these consent requirements withstand the *Central Hudson* test, should the Court find them unconstitutional, it should invalidate only that part of the statute. Without the additional consent requirements at Section 2710(b)(2)(B)(i)-(iii), the VPPA remains "capable of functioning independently." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2352 (2020). Given the Supreme Court's "strong presumption of severability," *id.* at 2350, the remainder of the law should stand.

of commercial speech than noncommercial speech." *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 426 n.21 (1993). And setting aside whether, or by how much, less-restrictive consent requirements could also advance the statute's objectives, *Central Hudson* does not require the least restrictive means of regulating commercial speech, but rather a "fit between the legislature's ends and the means chosen to accomplish those ends" that is "reasonable." *See Fla. Bar*, 515 U.S. at 632 (quoting *Fox*, 492 U.S. at 480). So long as the fit is "reasonable," courts "leave it to governmental decisionmakers to judge what manner of regulation may best be employed." *Fox*, 492 U.S. at 480. Given the interests at stake, the VPPA is sufficiently narrowly tailored. *Accord Hearst I*, 192 F. Supp. 3d at 451.

Accordingly, the VPPA passes intermediate scrutiny.

## IV. The VPPA Withstands Cinépolis's As-Applied Constitutional Challenge.

### a. As applied to Cinépolis, the VPPA is not unconstitutionally vague.

Cinépolis's as-applied vagueness challenge also lacks merit. Cinépolis argues that if the VPPA applied to it, the statute would be unconstitutionally vague because "Cinépolis did not have notice that the statute[] would be construed to apply to a public movie theater." Mot. to Dismiss at 20. As discussed above in Part II, the challenged VPPA terms are a far cry from the "wholly subjective" terms in cases where statutes have been struck down for vagueness. *See Williams*, 553 U.S. at 306. And there is certainly no language in the statute limiting its applicability to only videos viewed in a person's home. *See generally* 18 U.S.C. § 2710.

Additionally, the extended string of cases applying the VPPA to conduct like that alleged here necessarily defeats Cinépolis's vagueness challenge.[5]  Although not every VPPA case has been successful on the merits, many courts have applied the VPPA to disclosures to social media companies.  *See, e.g.*, *Czarnionka v. The Epoch Times Ass'n, Inc.*, No. 22-cv-6348, 2022 WL 17069810, at *1 (S.D.N.Y. Nov. 17, 2022) (disclosure of video viewing history through Facebook pixel); *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1093-94 (N.D. Cal. 2015) (disclosure of video viewing history by provider of on-demand video content to social media company).  The statute also provides clear standards for how businesses can comply with the VPPA, including providing exemptions, *see* 18 U.S.C. § 2710(b)(2)(A)-(F), and detailing consent requirements, *see id.* § 2710(b)(2)(B)(i)-(iii). These cases, combined with the statute itself, provided Cinépolis with a "reasonable opportunity to know what is prohibited" including "explicit standards." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

### b. Cinépolis's as-applied First Amendment challenge also fails.

Cinépolis's argument that the VPPA violates the First Amendment as applied to it, Mot. to Dismiss at 20-22, relies on the wrong standard and is also unavailing. Cinépolis seemingly argues that the VPPA as applied to it would violate the First Amendment because movie theaters are places of public accommodation with no reasonable expectation of privacy under *Katz v. United States*, 389 U.S. 347 (1967). Mot. to Dismiss at 20-21.  However, *Katz* involves a Fourth Amendment reasonable expectation of privacy test, 389 U.S. at 358-59, which is not applicable to Cinépolis's as-applied First Amendment challenge.  Instead, because the VPPA regulates

---

[5] It is worth noting that the *Osheske* decision, which held the VPPA did not apply to movie theaters, 2023 WL 8188464, at **3-4 (decided Oct. 31, 2023), was decided *after* the alleged disclosure of PII by Cinépolis in May 2023, Compl. ¶ 65.

commercial speech, the relevant inquiry is whether the statute withstands intermediate scrutiny under *Central Hudson*, which, as discussed above in subpart III, it does.

Cinépolis tries to differentiate itself from video rental stores by asserting it is a "place of public accommodation," Mot. to Dismiss at 20-21 (citing 42 U.S.C. § 12181 (7)(c)), but so too are video rental stores, *see* 42 U.S.C. § 12181(7)(E) (defining as places of public accommodation as including "sales or rental establishment[s]"). That a person watches a movie in their own home, as opposed to a movie theater, does not eliminate the governmental interest in protecting privacy and preventing chilling, discussed *supra* subpart III(a). The differences between the video-rental stores prominent when the VPPA was enacted in 1988 and Cinépolis's movie theaters are differences of degree rather than of kind. Companies that sell theater tickets online have the capacity to accumulate a range of information about their patrons that is significantly broader than a customer can realistically acquire simply by observing fellow audience members. And customers watching a movie in a theater can exert at least some control over the extent to which his behavior is witnessed, for example, by choosing less popular showtimes.

Cinépolis's reliance on *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65 (1973), is similarly misplaced. In *Paris Adult Theatre*, the Supreme Court held there was no First Amendment right to watch obscene movies in a public theater, as obscene material receives no First Amendment protection, and whatever right of privacy persons have to watch these kinds of film in their own home does not extend to public places. *Id.* at 65. Cinépolis does not allege that it shows obscene movies, thus disclosing their consumers' viewing history risks chilling protected speech. *See Van Hollen*, 811 F.3d at 488 ("Disclosure chills speech."); S. Rep. No. 100-599, at 4

("Protecting an individual's choice of books and films is a . . . pillar of intellectual freedom under the first amendment." (citing *Stanley*, 394 U.S. at 565)).

## CONCLUSION

For the foregoing reasons, the Court should reject Cinépolis's constitutional challenge.


Dated: March 29, 2024                     Respectfully submitted,


                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General
                                          Civil Division

                                          LESLEY FARBY
                                          Assistant Branch Director
                                          Civil Division, Federal Programs Branch

                             By:          */s/ Bonnie E. Devany*
                                          BONNIE E. DEVANY
                                          Tex. Bar No. 24131173
                                          Trial Attorney
                                          Civil Division, Federal Programs Branch
                                          United States Department of Justice
                                          1100 L Street NW
                                          Washington, DC 20005
                                          Tel.: (202) 616-8101
                                          Fax: (202) 616-8460
                                          Email: bonnie.e.devany@usdoj.gov

                                          *Counsel for United States*

Brief in Support of Constitutionality          Case No. 2:23-cv-9608-ODW-AJR

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

*/s/ Bonnie E. Devany*
BONNIE E. DEVANY